# Wytheville.

## TUCKER v. COMMONWEALTH.

### June 18th, 1891.

1. CRIMINAL PROCEEDINGS—*Conviction.*—Until proved guilty accused is presumed innocent, and to warrant conviction proof must exclude every rational hypothesis of innocence.

2. IDEM—*Case at bar*—Accused and deceased had long been inimical, and had made frequent threats to kill one another. On day of homicide both were seen going towards an orchard, part whereof each possessed. The former with his gun, two children aged ten and twelve, respectively, a sled and horse, was going for apples. The latter, also with his gun, followed at no great distance, and a few hours later was found near fence of orchard dead, with head crushed and back pierced by a bullet. A commonwealth's witness testified that on that day from mountains three-quarters of a mile off, he heard accused's voice swearing, &c., in the orchard, saw smoke arise, heard report of gun, and later a second, and immediately a man ran and disappeared in orchard. The children, for the defence, testified that they were with accused; that he did not shoot, but that some unseen person fired twice at him, one ball passing through his hat, the other through his shirt; that he did not hear of homicide for several hours, and before hearing had started for a warrant to arrest deceased—

HELD:

Evidence insufficient to warrant verdict of guilty of murder in the second degree, and a new trial should have been granted accused.

3. APPELLATE PRACTICE—*Evidence certified.*—Where exceptor's evidence does not conflict with exceptee's or with any inference which the jury might have reasonably drawn therefrom, such evidence is not waived by the rule under § 3484.

Error to judgment of circuit court of Craig county, rendered at the October term, 1890, whereby the plaintiff in error, Alexander Tucker, was sentenced to confinement in the peni-

tentiary for the period of ten years, in accordance with the verdict of the jury at the trial of an indictment against him for the murder of Strodder Helms. There was a motion for a new trial on the ground that the verdict was contrary to the law and the evidence, which motion was overruled. To this ruling the prisoner excepted, and the evidence was certified to this court in the bill of exceptions, and the case is here on writ of error and *supersedeas.* Opinion states the case.

*William Skeen*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, for commonwealth.

LEWIS, P., delivered the opinion of the court.

The single question to be determined is, whether there was error in overruling the motion for a new trial. The case, briefly stated, is substantially as follows :

The dead body of the deceased was found in the highway on the 13th of August, 1889, with the top of his head crushed and a bullet wound in the back. His gun was found lying near the body, empty and broken. Both the prisoner and the deceased were seen going, that morning, in the direction of an orchard, some distance from their respective residences, a portion of which belonged to the former and another portion, called " the dower interest," was in the possession of the latter. There had existed, for some time previous to the homicide, an animosity between them, and each had been heard to threaten to kill the other.

The prisoner was accompanied by his two children, aged, respectively, ten and twelve years, going to the orchard, with a horse and a sled, for apples. He also carried his gun. The deceased, who likewise carried a gun, followed not a great distance behind. The dead body was found a few hours afterwards, near the orchard fence.

A witness, W. E. Starks, testified that the same morning he was on a mountain, about three-quarters of a mile from the orchard, and in view of it, " coursing bees "; that while there he heard the prisoner's voice at the orchard " swearing, rearing, and charging "; that he " saw a person " in the orchard, and soon afterwards heard the report of a gun, and then a second report, and " saw smoke rise up "; that " immediately after the second shot a man ran and disappeared in the orchard, and then all became quiet."

On the other hand, both of the prisoner's children testified, as witnesses for the defence, that they were with their father all the time, and that he did not shoot, that morning, while he was absent from home. The body was first discovered between 10 and 11 o'clock A. M. They also testified that the prisoner knew nothing of the homicide until several hours after it had been committed, and that before hearing of it he started to get a warrant from a justice of the peace for the arrest of Helms (the deceased). They further testified that while the prisoner was in the orchard gathering apples, two shots were fired at him—they did not see by whom—and that one ball passed through his hat and the other through his shirt. And as this evidence is not in conflict with the commonwealth's evidence, or with any inferences that the jury could have reasonably drawn therefrom, it is not waived by the demurrer to evidence. We say demurrer to evidence because the evidence (not the facts) being certified, the case is to be considered in the appellate court as if there had been a demurrer to evidence, according to the rule of decision prescribed by section 3484 of the Code.

These are the salient points in the evidence, and we are constrained to the conclusion that the case of the commonwealth is not made out. A dreadful crime, undoubtedly, has been committed, but that the prisoner committed it is not shown by this record. Every man, in the eye of the law, is innocent until he is proven guilty; and not only is the burden of proving

the guilt of a person, charged with crime, on the commonwealth, but to warrant a conviction his guilt must be proven to the exclusion of every rational hypothesis consistent with his innocence. Circumstances of mere suspicion are not sufficient. In other words, the rule, as often stated, is that before the jury can convict they must be satisfied, not only that the circumstances are consistent with the prisoner's having committed the crime charged, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that he is guilty. " To doubt," it has been said, " is to acquit."

Applying this elementary test to the present case, it is obvious, without the least discussion of the evidence, that the judgment must be reversed, and the case remanded for a new trial.

JUDGMENT REVERSED.