# Wytheville.

## Montgomery v. Commonwealth.

### June 14, 1900.

1. Criminal Law—*Defence of Person or Property—Trespass.*—A man may rightfully use as much force as is necessary for the protection of his person or property, provided he does not endanger human life, or do great bodily harm. But for a mere trespass upon land, the owner has no right to assault the trespasser with a deadly weapon, the result of which may be to kill him or do him great bodily harm. Life may be taken to save life or limb, or to prevent a great crime, or to accomplish a necessary public duty, but not because the slayer cannot otherwise effect his object, even though that object be right.

2. Criminal Law—*Indictment — Malicious Wounding — Conviction of Lesser Offence.*—On an indictment for malicious cutting and wounding with intent to maim, disfigure, disable and kill, the defendant may be convicted of unlawful cutting and wounding with like intent, or of assault and battery.

Error to a judgment of the Circuit Court of Rockbridge county, rendered February 26, 1900, affirming the judgment of the County Court of said county, rendered November 17, 1899, whereby plaintiff in error was sentenced to the penitentiary for a term of four years.

*Reversed.*

The opinion states the case.

*Hugh A. White,* for the plaintiff in error.

*Attorney-General A. J. Montague,* for the Commonwealth.

Harrison, J., delivered the opinion of the court.

The prisoner was indicted in the County Court of Rockbridge county for felonious assault with intent to maim, disfigure, disable and kill William E. Davidson. He was found guilty, and sentenced, in accordance with the verdict, to confinement in the penitentiary for a term of four years.

Upon petition for a writ of error and *supersedeas*, the Circuit Court of Rockbridge having refused to grant a new trial, the case is now before this court for review.

The salient facts established by the Commonwealth are as follows: The prisoner went upon the lands of Davidson for the purpose of selling a gun to Reed Tyler, one of the hands on the place. While in conversation with Tyler and John Randolph, a tenant on the premises, Davidson, who was riding by, was called up by Randolph, who said to him: " Here is a man who says he is going to hunt anyhow." Davidson then told the prisoner that he could not hunt, that the land was posted to white and black. The prisoner replied that he was not hunting, but that he had seen no notices of posting, and if he had seen anything would have shot at it. Davidson then asked the prisoner what business he had, and was told that he had come to sell his gun, and that Reed Tyler had bought it. Davidson said, if you have transacted your business you must leave, and motioned his hand to him to go. The prisoner replied that he would go when he got ready. Davidson then dismounted and started toward the prisoner, saying: " I will see about that." The prisoner, with his gun in hand, stepped back some ten or fifteen feet, saying, " If you hurt me I'll shoot you, damn you." Davidson picked up a corn-cutter recently ground and sharp, ran to the prisoner, and they clinched. In the scuffle, the gun was discharged in the air, and Davidson received, it does not clearly appear how, a cut and some abrasions on the head. They fell to the ground, Davidson on top. After some scuffle the prisoner cried, " Take him off," and they were separated. Davidson was not laid up by

his wounds, and was "all right," as stated by his physician, at the time of the trial, which was within six weeks from the date of the affray.

The first error assigned is the action of the court in refusing certain instructions asked for by the prisoner, and giving of its own motion in lieu thereof the following:

" The court instructs the jury that W. E. Davidson had the right to require the accused to leave his premises, and that if the accused refused to leave when so requested, the said Davidson had the right to use such force as was necessary to eject him from his premises."

The theory of the prosecution is that the prisoner, having refused to leave immediately upon being ordered to do so, thereby became a trespasser, and as such, Davidson had a right to use any force necessary to remove him, even to the extent of assaulting him with a deadly weapon.

The prisoner contends that, if he was a trespasser at all, the trespass was of the most trivial character, as he was neither doing nor threatening to do any harm to Davidson or his property, and that his act did not justify the assault made upon him with a deadly weapon, and that he had a right to defend himself from such assault.

The instruction as given contains the general rule, which is sound as an abstract proposition, that every man has the right to defend his person or property, but it ignores the well settled and important modification of the rule that in defence of person or property one cannot, except in extreme cases, endanger human life or do great bodily harm. The law is clearly stated by a learned judge in *State* v. *Morgan*, 3 Ired. 186, 38 Am. Dec. 714, as follows: " When it is said that a man may rightfully use as much force as is necessary for the protection of his person and property, it should be recollected that this rule is subject

to this most important modification, that he shall not, except in extreme cases, endanger human life or do great bodily harm. It is not every right of person, and still less of property, that can lawfully be asserted, or every wrong that may rightfully be redressed by extreme remedies. There is a recklessness—a wanton disregard of humanity and social duty, in taking or endeavoring to take, the life of a fellow-being, in order to save one's self from a comparatively slight wrong, which is essentially wicked, and the law abhors. You may not kill, because you cannot otherwise effect your object, although the object sought to be effected is right. You can only kill to save life or limb, or prevent a great crime, or to accomplish a necessary public duty." See, also, 1 Bishop on New C. L., secs. 839, 841, 850.

In the light of these elementary principles, and in view of the facts of this case, it is clear that the instruction given by the court was erroneous, calculated to mislead the jury, and very prejudicial to the rights of the prisoner. Conceding that the prisoner was a trespasser, and that he ought to have promptly left the premises when ordered to do so, still, this did not justify the assault made upon him. Davidson, armed with a recently sharpened corn-cutter, advancing upon the prisoner and saying that he would see about his leaving, was well calculated to excite in the prisoner apprehension of great bodily harm. Under such circumstances the prisoner had the right to defend himself within the limits of the law, and the jury should have been so instructed.

There was no error in refusing to give defendant's Instruction No. 2. Although the evidence might not prove a malicious cutting and wounding with intent to maim, disfigure, disable and kill, the defendant was not necessarily entitled to an acquittal, for if the evidence proved an unlawful cutting and wounding with such intent, or merely an assault and battery, he might have been convicted of either of these latter offences, although the indictment charged a malicious cutting and wounding with intent, &c. Code, sec. 4040; *Canada's Case*, 22 Gratt. 899.

Opinion.

It was error to refuse defendant's Instructions Nos. 3 and 4. For a mere trespass upon land, the owner has no right to assault the trespasser with a deadly weapon, the result of which may be to kill him or do him great bodily harm. The question involved in these two instructions has been considered in connection with instruction "A" which was given by the court in lieu of Nos. 3 and 4, and need not therefore be further discussed.

There was no error in refusing Instruction No. 5 asked for by the defendant. That instruction is so plainly erroneous that comment is not necessary.

For these reasons the judgment of the County Court of Rockbridge county must be reversed, the verdict set aside, and a new trial awarded to be had in accordance with the views herein expressed.

*Reversed.*