Statement.

## Staunton.

### MONTGOMERY v. COMMONWEALTH.

#### SEPTEMBER 20, 1900.

Absent, Riely, J.

1. CRIMINAL LAW—*Instructions—Weight of Evidence.*—It is not the practice in the courts of this State to give instructions which amount, in substance, to telling the jury that the evidence is not sufficient to convict a prisoner, and such instructions should not be given.
2. CRIMINAL LAW—*Trespasser—Self-Defence.*—Upon the evidence in this cause, the instructions asked by the prisoner' touching the right of an alleged trespasser on land to resist a violent assault made upon him with a deadly weapon by the owner of the land, correctly states the law of self-defence.
3. CRIMINAL LAW—*Instructions—Evidence to Support—Conflicting Instructions.*—An instruction should not be given when there is no evidence tending to support it, nor when it conflicts with other instructions already given. Conflicting instructions are presumed to be prejudicial, and only when it clearly appears that no injury could have resulted from such conflict will this court refuse to set aside a verdict rendered in the case.
4. INSTRUCTIONS—*Ignoring Part of Evidence—Partial Review of Case.*—An instruction which calls special attention to a part only of the evidence, and the fact or facts it tends to prove, and ignores the residue of the evidence and the facts it may tend to prove, and which may be equally important in leading the jury to a correct conclusion, is misleading and should not be given.

Error to a judgment of the County Court of Rockbridge county, rendered July 6, 1900, whereby the plaintiff in error was sentenced to the penitentiary for the term of three years and six months.

*Reversed.*

This case has once before been heard in this court, *ante* p. 840.

The facts of the case sufficiently appear in the opinion of the court. The instructions offered by the prisoner and refused, and referred to in the opinions as "Instructions 1, 2, $2\frac{1}{2}$ and $3\frac{1}{2}$ were as follows:

"1. The court instructs the jury that taking all the testimony introduced in this case as true, there has not been established such facts as would warrant a verdict of guilty, and the jury are therefore instructed to find a verdict of not guilty.

"2. The court instructs the jury that if they believe from the evidence in this case that all the facts are proven which the testimony tends to prove, then the defendant is not guilty, and they must so find.

"$2\frac{1}{2}$. The court instructs the jury that the evidence introduced in this case does not tend to prove any facts upon which a verdict of guilty could be based, and they are therefore instructed to find the prisoner not guilty.

"$3\frac{1}{2}$. The court instructs the jury that the evidence in this case does not tend to prove any fact upon which self-defence on the part of Davidson could be based, and they are therefore instructed that they cannot consider self-defence on the part of Davidson."

The Circuit Court of Rockbridge county refused a writ of error.

*Hugh A. White*, for the plaintiff in error.

*Attorney-General A. J. Montague*, for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

Plaintiff in error was convicted in the County Court of Rockbridge county of maliciously and feloniously cutting and wounding one William E. Davidson, and sentenced, in accordance with

the verdict of the jury, to confinement in the penitentiary for a term of four years, but upon a writ of error from this court, he was awarded a new trial. *Ante* p. 840.

At the July term, 1900, of the County Court, the prisoner was again tried, convicted, and sentenced, in accordance with the verdict of the jury, to imprisonment in the penitentiary for the term of three and a half years; whereupon, he applied to the judge of the Circuit Court for a writ of error, which was refused, and the case is again before us upon a writ of error awarded by a judge of this court.

While some of the witnesses at this second trial testified in different phraseology, and perhaps in stronger terms than at the former trial, the case made for the Commonwealth is substantially the same as before, and is as follows:

The prisoner went upon the lands of Davidson for the purpose of selling a gun to Reed Tyler, one of the hands on the place. While in conversation with Tyler and John Randolph, a tenant on the premises, Davidson, who was riding by, was called up by Randolph, who said to him: " Here is a man who says he is going to hunt anyhow." Davidson then told the prisoner that he could not hunt, that the land was posted to white and black, and asked, " What are you here for?" To which the prisoner replied, " Reed Tyler has bought my gun for $3.00," which statement was confirmed by Tyler, who was present. Prisoner also said that he was not hunting, but that he had seen no notice, and if he had seen anything he would have shot at it, or that he was not particularly hunting, but if he had seen anything he would have shot at it, as he had seen no notices. Davidson then told prisoner that if he had transacted his business to leave. Prisoner replied: " I will go when I get ready," or "when I feel like it." Davidson then said: " I will see about that." He was then up near the porch and the prisoner was sitting on the porch. With the declaration that " he would see about that," Davidson got off his horse on the side away from the prisoner,

passed under his horse's neck and reached out for the gun, saying, " Give me that gun and leave here." Whereupon the prisoner jumped up and sprang back ten or twelve feet from Davidson, and said, " If you fool with me (or bother me or come here, according to various witnesses), I will shoot you, .damn you." Davidson turned around, grabbed a corn-cutter eighteen inches long and sharp, having been ground or filed a few hours before. Prisoner, still backing, repeated his statement, saying, " I will shoot you, damn you," and held his gun cocked, towards Davidson, but down by his side. Davidson said, " I don't care for your gun," and sprang at prisoner and knocked the gun up with his left hand, and both barrels went off in the air, and the barrels of the gun about this time were broken from the stock. They then clinched and fell some thirty or thirty-five steps from where they started, Davidson on top beating prisoner with his fist. After prisoner had cried, " Take him off," and Randolph had exclaimed, " My God, are you going to see him kill the man," Davidson was taken off and prisoner left, Davidson throwing the stock of the gun at him. In the fight Davidson received, it does not clearly appear how, a cut and some abrasions on the head and face. The whole affair, from the time Davidson got off his horse until they clinched, occupied but "a moment of time, very quick, quicker than it takes to tell it," as the witnesses express it.

The first assignment of error relates to the refusal of the court to give certain instructions asked for by the prisoner, and the giving of its own motion in lieu thereof the following instruction, marked "A":

" The court instructs the jury that W. E. Davidson had the right to require the accused to leave his premises, and that if the accused refused to leave when so requested, the said Davidson had the right to use such force as was necessary to eject him from

his premises, *but not to endanger his life or do him great bodily harm.*"

Instructions 1, 2, 2½ and 3½, asked for and refused, may be disposed of together. They amount in substance to telling the jury that the evidence was not sufficient to convict the prisoner. In the view that we take of the case, it is sufficient to say that this is not the practice in the courts of this State.

Instruction No. 8, refused, told the jury that if they believed from the evidence that the prisoner came upon the lands of Davidson for the lawful purpose of selling his gun, or even if they believed that he came upon the land to hunt, and refused to go when ordered, and that upon his refusal to go Davidson got down off his horse, saying, " I will see about that," or words to that effect, and started towards the prisoner demanding his gun, and that then the prisoner jumped up and backed back ten or fifteen feet, and holding his gun in his hands, said to Davidson, " If you hurt me I will shoot you, damn you," or words to that effect, and that Davidson replied, " I am not afraid of your gun," and picked up a corn-cutter and started for prisoner, and prisoner further said, " I'll shoot you," then there is nothing in these facts to warrant the belief or assumption that Davidson was acting in self-defence, but there is sufficient in these facts to warrant the belief and assumption that the prisoner was acting in self-defence and within his rights, and that if they believed the above facts, then they should regard Davidson as the aggressor from the beginning, and find the prisoner not guilty.

Instruction No. 9 told them that if they believed from the evidence that the prisoner was a trespasser upon the lands of Davidson, and that he ought to have promptly left when ordered to do so, still this did not justify an assault upon him, even though Davidson could not otherwise effect the removal of the prisoner, and that if they further believed from the evidence that Davidson did start towards the prisoner in a threatening

manner with a corn-cutter, then the prisoner was justified in defending himself; and if he believed that his life was in danger, or that he was in danger of great bodily harm, his right of defence extended to the killing of Davidson, and he is not guilty. Further, that in this connection, the mere attack upon the prisoner with a deadly weapon was a fact of itself sufficient to raise the presumption that the life of the prisoner was in danger, or that he was in danger of great bodily harm, and sufficient of itself to raise the presumption that the prisoner did believe his life was in danger, or that he was in danger of great bodily harm, and, therefore, if they believed these facts, no other evidence was necessary to prove that prisoner's life was in danger, or that he was in danger of great bodily harm, or to prove that prisoner believed his life was in danger, or that he was in danger of great bodily harm, and it made no difference whether as a matter of fact Davidson really meant to kill or do great bodily harm, since the use of a deadly weapon made danger apparent, which was sufficient.

These instructions are in accord with the opinion of this court as to the law of the case, when it was here before upon practically the same state of facts, and propound correctly the law of self-defence too well settled to require citation of further authority. *Montgomery* v. *Commonwealth*, 98 Va. 840.

The Instruction "A" given by the court in lieu of Instructions 8 and 9 refused, is identical with the one given at the former trial and held erroneous by this court, except that the last twelve words, which are italicized above, are added.

On the former case it was contended, and Instruction "A" given at the last trial sustains the view, that if the prisoner did not leave Davidson's premises when ordered to do so, Davidson had the right to use such force as was necessary to eject him therefrom. In the opinion of the court by Harrison, J. (*Montgomery* v. *Commonwealth*, *supra*), it is said: "Conceding that the prisoner was a trespasser, and that he ought to have left the

premises when ordered to do so, still, this did not justify the assault made upon him.  Davidson, armed with a recently sharpened corn-cutter, advancing upon the prisoner and saying that he would see about his leaving, was well calculated to excite in the prisoner apprehension of great bodily harm.  Under such circumstances, the prisoner had the right to defend himself within the limits of the law, and the jury should have been so instructed."  It was further said that a simple trespass upon land does not give the owner the right to assault the trespasser with a deadly weapon, the result of which may be to kill him or do him great bodily harm.

The giving of Instruction "A," with the words *but not to endanger his life or do him great bodily harm,*" is predicated upon an erroneous interpretation of the opinion of this court. It is obvious from the opinion and authorities quoted from in support of it, that the view of the court was that the instruction was not applicable to the case, and the facts which the evidence at the last trial tended to prove being, as we have observed, practically the same, the adding of the latter clause to the instruction does not cure that objection.  It is also amenable to the objection that it is inconsistent with Instructions Nos. 5 and 7 rightly given for the prisoner at the last trial, No. 5 being identical with No. 3, asked for by him and refused at the first trial, and held by this court to be a correct instruction.

It cannot be said that the refusal to give the prisoner's instructions 8 and 9, and the giving in lieu thereof Instruction "A," is cured by other instructions given for the prisoner, though perhaps this might have been true had not Instructions 1 and 2, asked for on behalf of the Commonwealth, been given. They are as follows:

1. " The court instructs the jury that on a trial for malicious cutting and wounding another, with intent to maim, disfigure, disable or kill, the law of self-defence is the law of necessity,

and the necessity relied on to justify any cutting or wounding of another, must not arise out of the prisoner's own misconduct; and if the jury believe from the evidence, that the prisoner, Daniel Montgomery, assaulted W. E. Davidson, and thereby brought about the necessity for cutting or wounding the said W. E. Davidson, then the prisoner cannot justify the cutting or wounding of said W. E. Davidson by a plea of necessity, unless he was without fault in bringing the necessity upon himself.

2. " The court instructs the jury that if they believe from the evidence that the prisoner was on the land of W. E. Davidson without authority, and that W. E. Davidson approached the prisoner and ordered him off the land, and the prisoner refused to go, and if they further believe from the evidence that the prisoner cocked his gun and presented the same at the said W. E. Davidson, and that the said W. E. Davidson had reason to believe that the prisoner was about to shoot him, then the said W. E. Davidson had the right to use all reasonable and necessary means to protect himself from the apprehended injury to him."

The first practically told the jury that if the prisoner was in fault in bringing about the necessity for the assault, then he could not plead self-defence, and when Instructions 1 and 2 are read together in connection with Instruction "A" they are well calculated to, and doubtless did, mislead the jury to the conclusion that if the prisoner was merely in fault in refusing to go when ordered away, Davidson was right in resorting to the force he employed to remove him, and prisoner was wrong in resisting the force.

The instructions erroneously proceed upon the idea that the evidence tended to prove that the prisoner assaulted Davidson before the cutting or wounding, leaving out of view the evidence going to show that the prisoner retreated until sprung upon by Davidson with a deadly weapon, and then did the cutting, or wounding, in the fight that immediately ensued.

It was said by Riely, J., in *New York, &c. R. Co.* v. *Thomas*, 92 Va. 608: " Calling the special attention of the jury to a part only of the evidence, and the particular fact or facts it may tend to prove, and ignoring the residue of the evidence and the facts it may tend to prove, gives undue prominence to such recited evidence, and disposes the jury to regard it and the fact it tends to prove as the particular evidence, and the facts to be relied on in determining the issue before them, and thus mislead them.

" Instructions in writing are carried by the jury to their room, where they retire to consider of their verdict, and, if they contain a rehearsal of a part only of the evidence, their tendency is to impress mainly upon the jury such part of the evidence, to the disadvantage of the other evidence in the case, which may be equally or more important in determining the issue, but rests only in the memory of the jury." *Seaboard R. R.* v. *Joyner*, 92 Va. 354; *Hansbrough* v. *Neal*, 94 Va. 722; *Kimball, &c.* v. *Borden*, 95 Va. 203.

In discussing whether or not contradictory or inconsistent instructions are prejudicial, it is said by Keith, P., in *Jackson's Case*, 97 Va. 764: " It has been said by this court that all error is presumed to be prejudicial, and while it has approved verdicts rendered upon erroneous instructions, it does so with great caution, and only when it clearly appears that no injury could have resulted from the error. A lawyer reading the instructions in this case would scarcely be misled by them, but instructions are given to juries because they are not lawyers. They are given to aid the jury in reaching a right conclusion, and not in order to exercise their skill in reconciling contradictory propositions."

If it were conceded that there is evidence tending to prove that the prisoner cocked his gun and presented it before Davidson picked up the corn-cutter and sprang at him, the Instruction No. 2 given for the Commonwealth should not have singled out

this evidence, and ignored the evidence tending to prove self-defence on the part of the prisoner.

We are further of opinion that the prisoner's Instructions 8 and 9 rightly set out the conduct of both parties as the evidence tended to prove it, and correctly propounded the law applicable to the case, and that the court below erred in refusing to give them, and in giving in lieu thereof its own Instruction "A."

The judgment of the County Court will be reversed and annulled, the verdict of the jury set aside, and a new trial awarded, to be had in accordance with this opinion.

*Reversed.*