# Richmond.

## Cox v. Commonwealth.

### November 13, 1924.

1. INTOXICATING LIQUORS—*Unlawfully Keeping and Storing—Evidence Held not Sufficient to Support a Conviction.*—In the instant case, a conviction for unlawfully keeping and storing ardent spirits, it appeared from the evidence that two officers searched the premises of the accused and found nothing except several empty jars with a few drops of liquor in them. They then followed a path leading from the back door of the accused's house to a barbed wire fence some seven or eight steps from the house. Continuing on the other side of the fence they found nine gallons of liquor about seven or eight steps from the fence concealed in the woods. The land on which the liquor was found did not belong to the accused. The officer said that defendant told him he knew the whiskey was there but this defendant denied. Defendant also gave a satisfactory explanation supported by the uncontradicted testimony of other witnesses for the existence of the path.

    *Held:* That the testimony as a whole was not sufficient to support a verdict of guilty.

2. DEMURRER TO THE EVIDENCE—*Evidence of Demurrant not in Conflict with that of the Demurree.*—A demurrant to the evidence does not give up his unimpeached testimony which is not in conflict with the evidence for the demurree.

3. CRIMINAL LAW—*Evidence Sufficient to Support Conviction—Reasonable Doubt—Mere Suspicion.*—*Evidence must be inconsistent with accused's innocence.*—To convict of a crime, the jury must be satisfied from the evidence of the guilt of the accused beyond a reasonable doubt, and they cannot be so satisfied if the evidence is equally consistent with his guilt or innocence. Mere suspicion, however grave, is not sufficient to support a verdict of guilty. The evidence must be, not only consistent with the guilt of the accused, but inconsistent with his innocence.

4. INTOXICATING LIQUORS—*Argument of Counsel—Knowledge of Whereabouts of Liquor—Duty to Report.*—In the instant case, a prosecution for keeping and storing liquor, the attorney for the Commonwealth, in the argument of the case before the jury, was permitted to state to the jury, over objection of counsel for the defendant, that if the accused knew that the liquor in question was there, meaning on property ad-

joining his, and did not report this fact to the proper authorities, then he (the accused) was *particeps criminis;* to this argument the counsel for the accused objected, which objection the court overruled, and the accused excepted.

*Held:* That the exception was well taken, that the argument did not correctly state the law and was highly prejudicial to the accused.

5. Intoxicating Liquors—*Prosecution for Keeping and Storing—Manner of Concealment Immaterial.*—In a prosecution for unlawfully keeping and storing ardent spirits, whether the whiskey was found in stump holes or holes dug in the ground, was wholly immaterial, and was not a proper subject of contradiction.

6. Witnesses—*Impeachment—Statements on Former Trial—Bill of Exceptions.*—A bill of exceptions, in narrative form not purporting to give the language of the witnesses, nor every statement made by them, is inadmissible to contradict statements of witnesses made on a second trial, where the bill does not specifically show prior inconsistent statements by the witnesses. If received in evidence, it would not show any statements in conflict with the testimony of the witnesses on the second trial, but only that, if the statements were made, they were omitted from the bill of exceptions.

7. Witnesses—*Impeachment—Statements on Former Trial—Bill of Exceptions—Case at Bar.*—Bills of exception are usually prepared by counsel for the losing party and submitted to opposing counsel, and, if agreed to, do not receive that critical examination by the trial court they would be otherwise subjected to. When, as in the instant case, they are given in narrative form, they are generally prepared from such notes as counsel have taken during the trial and from the recollection of counsel. The omission from such a bill of a statement made on a second trial cannot be said to be in contradiction of the latter statement, and the trial court committed no error in excluding it.

8. Witnesses—*Impeachment—Statements on Former Trial—Bill of Exceptions.*—While the majority of courts receive a bill of exceptions to prove the tenor of testimony on a former trial in a later proceeding between the same parties, yet, such a bill of exception ought not to be admitted in evidence in any proceeding to impeach or contradict a witness whose evidence it purports to contain, unless verified and supported as other proof.

Error to a judgment of the Circuit Court of Albemarle county.

*Reversed.*

The opinion states the case.

*R. C. Walker* and *W. O. Fife,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

Burks, J., delivered the opinion of the court.

James M. Cox, the plaintiff in error, was indicted, tried and convicted of unlawfully keeping and storing ardent spirits, and his punishment fixed at a fine of $75.00 and imprisonment in jail for thirty days. He assigns a number of errors, but all of them were abandoned at the hearing except those hereinafter considered.

It is assigned as error that the verdict of the jury was plainly contrary to the evidence and without evidence to support it.

[1] The only testimony offered by the Commonwealth was that of two of the officers who made the arrest. They were not familiar with the location, and were not particularly observant. They were in search of evidence of violation of the prohibition law and found it, but whether their testimony is sufficient to identify Cox as the violator is the question we have to consider.

These two officers, with others, had a warrant to search the premises of Cox, and they searched them but found nothing of an incriminating nature except several empty jars that "had a little liquor in them   *   * just a few drops, what you would leave in there after washing," and which had "a smell of liquor about them." They observed, however, "a plain, slick path leading from the back door" of Cox's house to a barbed wire fence some seven or eight steps from the Cox house. The fence had some old clothing "or something of that kind" wrapped around it. They followed this path, and about the same distance beyond the

fence (seven or eight steps) they found two holes in the woods, covered with trash and leaves, and in them were eighteen half gallon jars of liquor, or nine gallons of liquor. The liquor was found on the land of G. H. Burnley, which was separated from the land of Cox by the wire fence aforesaid. The witnesses further testified that "Mr. Cox told us he knew the whisky was there and at the proper time he would tell who it belonged to." This is the substance of the testimony for the Commonwealth.

Cox testified in his own behalf, and denied all knowledge of the whisky or any connection with it, and especially denied having told the officers that he "knew the whisky was there and at the proper time he would tell who it belonged to." He also gave valuable testimony on topics detailed by other witnesses examined on his behalf. It clearly appears from the testimony for the defense, and is not controverted by that for the Commonwealth, that several hundred yards north of Cox's house there is a saw mill operated by three or four men; that on the opposite side of Cox's house, on the Burnley land, there is a spring; that the men at the saw mill regularly got their drinking water from this spring, and that the nearest and best way to the spring was along the path "right by Cox's" house, and across the wire fence aforesaid. The witnesses testify that "the saw mill was on one side of the house and the spring on the other;" that they saw the saw mill men "in the path going to the spring for water;" that in going to the spring the men passed "right by his house;" and that this path was the nearest and the best way from the saw mill to the spring. It also appears that from three to forty men had been engaged for several months in picking up loose stone on the Cox and Burnley

places, and that they too used the spring to get drinking water.

The testimony as a whole is not sufficient to support the verdict of the jury, which must be set aside. *Troutner* v. *Commonwealth*, 135 Va. 750, 115 S. E. 693.

[2] A demurrant to the evidence does not give up his unimpeached testimony which is not in conflict with the evidence for the demurree. Burks Pl. & Pr. (2d ed.), section 251, page 479.

[3] To convict of a crime, the jury must be satisfied from the evidence of the guilt of the accused beyond a reasonable doubt, and they cannot be so satisfied if the evidence is equally consistent with his guilt or innocence. Mere suspicion, however grave, is not sufficient to support a verdict of guilty. The evidence must be not only consistent with the guilt of the accused, but inconsistent with his innocence. *Hairston* v. *Commonwealth*, 97 Va. 759, 32 S. E. 797; *Davis* v. *Commonwealth*, 99 Va. 838, 38 S. E. 191; *Burton & Conquest* v. *Commonwealth*, 108 Va. 892, 62 S. E. 376; *Wooden* v. *Commonwealth*, 117 Va. 930, 86 S. E. 305, Ann. Cas. 1917-D, 1032; *Canter* v. *Commonwealth*, 123 Va. 794, 96 S. E. 284.

[4] It is assigned as error that after all the evidence was in and the jury instructed, "the attorney for the Commonwealth in the argument of the case before the jury was permitted to state to the jury, over objection of counsel for the defendant, that if the accused knew that the liquor in question was there, meaning on property adjoining his, and did not report this fact to the proper authorities, then he, the accused, was *particeps criminis*, to which argument and line of argument counsel for the accused objected, which objection the court overruled," and the accused excepted.

The exception is well taken, and the action of the

trial court in overruling the objection must be reversed. The argument did not correctly state the law and was highly prejudicial to the accused. The jury, no doubt, took the view expressed in the brief for the Commonwealth, that "from the failure of the accused to give the name of the owner of the whisky, the jury had a right to conclude that he was the owner."

This was the second trial of the case. On the first trial the judge of the trial court signed a bill of exception certifying the facts or a condensed statement of the evidence in narrative form. On the second trial, the witnesses for the Commonwealth testified that "Mr. Cox told us he knew the whisky was there and at the proper time he would tell who it belonged to," and they were asked if they had so testified on the former trial and they answered that they had. They also testified on the second trial that the whisky was found in certain holes dug in the ground, and that they had made the same statement at the first trial. The accused insisted that they had testified at the first trial that the whisky was found in stump holes. The accused offered in evidence the bill of exceptions taken at the first trial, signed by the trial judge, for the purpose of contradicting the witnesses for the Commonwealth in the two particulars above mentioned. The attorney for the Commonwealth objected to the reception of the bill of exceptions for the purpose aforesaid, and the court excluded it. This action of the trial court is assigned as error.

[5] Whether the whisky was found in stump holes, or in holes dug in the ground was wholly immaterial, and was not a proper subject of contradiction.

[6] The other question, however, was material, but the bill of exception offered in evidence does not show a prior inconsistent statement by the witnesses. It is

simply silent on the subject. It does not affirmatively show that the witnesses made the statement on the first trial which they made on the second. The testimony is given in narrative form, and the bill does not purport to give the language of the witnesses nor every statement made by them. The bill contains only the substance of so much of the testimony as counsel regarded as material for the purposes for which it was certified. If it had been received in evidence it would not have shown any statement in conflict with the testimony of the witnesses on the second trial, but only that, if the statements were made, they were omitted from the bill of exception which did not purport to give fully and accurately all that the witnesses said. Such use of the bill of exception would have been unfair to the witnesses who had no part in the preparation of the bill and who never saw it.

[7] Bills of exception are usually prepared by counsel for the losing party and submitted to opposing counsel, and, if agreed to, do not receive that critical examination by the trial court they would be otherwise subjected to. When as in the instant case, they are given in narrative form, they are generally prepared from such notes as counsel have taken during the trial and from the recollection of counsel. They are frequently prepared weeks after the trial and sometimes counsel disagree as to language of a witness, or whether a given statement was made or not, and unless the trial judge can settle the controversy the statement is omitted altogether or some substitute is agreed on as a compromise. The bill does not undertake to give everything the witness said, nor his exact language, but only the substance of what is necessary for the purposes of the bill. The omission from such a bill of a statement made on a second trial cannot be said to be a contra-

diction of the latter statement, and the trial court committed no error in excluding it.

[8] The use of the bills of exception on a second trial is discussed in 3 Wig. on Ev., section 1668, under the title "exceptions to the hearsay rule," but that use is much more comprehensive than that in the instant case. Many of the cases cited in the notes apply to the present use of such bills, and as pointed out by Wigmore they are by no means harmonious. After discussing some of the cases Wigmore concludes:

"From the point of view of practical safety, the question is a difficult one to settle by a general rule, and must depend much on the local professional methods. But it seems clear, so far as principle is concerned, that where the parties to the later trial are (as in the usual case) the same in interest, the signing of the bill in the first trial is an admission of the correctness of its statements, and the objection that the admission was intended for that trial only (*ante*, section 1066; *post*, section 2592) may affect its weight but not its admissibility; while, as against one not a party to the former trial, the bill involves no admission of his, and is furthermore not available as an official statement of the judge. The majority of courts, on one ground or another, receive the bill to prove the tenor of the former testimony."

But as said by the Supreme Court of Iowa, in *Boyd* v. *Bank*, 25 Iowa 255, such a bill of exception "ought not to be admitted in evidence in any proceeding to impeach or contradict a witness whose evidence it purports to contain, unless verified and supported as other proof." See also *St. Louis, etc., R. Co.* v. *Sweet*, 60 Ark. 550, 31 S. W. 571; *Edwards* v. *Gimbel*, 202 Pa. 30, 51 Atl. 357; *McCamant* v. *Roberts*, 80 Tex. 327, 15 S. W.

580, 1054.    Other cases pro and con are given in note 2 to section 1668, Wigmore, *supra.*

We have no case in the State directly bearing on the question, but in *Richards* v. *Commonwealth*, 107 Va. 881, 59 S. E. 1104, it was held: "The judge's notes taken at a former trial of a case, however full they may be, are not receivable to contradict a witness, because not taken in the discharge of any official duty, but merely for his own private convenience."

For the reasons hereinbefore stated, the judgment of the trial court will be reversed, the verdict of the jury set aside and the case remanded to the trial court for a new trial, if the Commonwealth shall be so advised.

*Reversed.*