# Richmond

## Crowder P. Whitt v. Commonwealth of Virginia.

March 7, 1949.

Record No. 3494.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Staples and Miller, JJ.

The opinion states the case.

*Blanks & Geyer*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Henry T. Wickham, Assistant Attorney General*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Whitt, the accused, was found guilty of operating a motor vehicle on the highways of the State of Virginia after he had had his license to do so suspended. His punishment was fixed at a fine of $100 and 30 days confinement in jail.

There were two assignments of error. First, exception was taken to the refusal of the court to grant the defendant a delay of two hours to secure a witness; and second, the refusal of the court to set aside the verdict of the jury as contrary to the law and the evidence.

The first assignment of error was waived at the bar of the court and need not be considered. The second assignment is directed to the incredibility of the testimony.

The only evidence which tends to sustain the verdict of the jury is that of Officer Byrd, of the North Carolina State Police Force. The offense is alleged to have been committed in Virgilina which is just a short distance from the North Carolina line.

Officer Byrd, who had known the accused for several years, was on duty on the night of Feburary 22, 1948, and drove across the State line into Virginia. At the time it was dark and he "double-parked" his car on the right hand side of the highway going south. With him was Officer Puryear, a town policeman of Virgilina. As they were sitting in the parked car, some 30 feet north of Ellickson's filling station which was on the opposite side of the road, Byrd observed a car approaching from the North Carolina line. This car was driven to a point between a funeral home and the filling station. This point was some 80 feet

from where Byrd's car was parked. Byrd testified that he saw the accused get out of the left-hand door of the car after it had been stopped, walk around in front of it, and that he went between the filling station and the funeral home. He testified positively that there was no one in the car with the accused. He further testified that he called the attention of Puryear to the fact that Whitt had gotten out of the car, and suggested to Puryear that Whitt's license to operate a car in Virginia had been revoked. He testified that neither he nor Puryear went over to the Whitt car to investigate and ascertain if any other person or persons were in the car. They made no complaint at that time charging Whitt with operating a car without a license, and according to the record they have never made a complaint against him. The record is silent as to who did make the complaint. It is stated in the petition, however, that the warrant was sworn out by one Coates, but he did not appear as a witness.

The testimony of Officer Byrd is directly and positively contradicted by that of Thomas Tuck, Kenneth Tuck, and B. P. Daniels. Daniels was a disinterested witness, standing in the doorway of the funeral home, close to where the car in which Whitt was riding was brought to a stop. He testified that he knew Thomas Tuck, Kenneth Tuck, and the accused. He definitely stated that Thomas Tuck drove the automobile and parked it, and that it was his (Tuck's) automobile and not Whitt's. He testified that Kenneth Tuck and Whitt were seated on the rear seat and that Whitt got out of the left-hand door of the car, there being only two doors, one on each side. He further testified that there were a number of cars parked on the street, and reiterated in positive terms that Thomas Tuck and not Whitt was driving at the time.

Kenneth Tuck and Thomas Tuck also testified that Thomas Tuck was driving the car; that Whitt was taken on as a passenger at Whitt's home, and that Whitt was riding in the rear seat immediately behind the driver so that when Whitt got out of the car the driver had to lean forward and bend the seat to the front so that Whitt could get out.

He also said that they parked at this point for some 20 or 30 minutes watching the crowd.

The only evidence on which the verdict is sustainable, if sustainable at all, is that of Officer Byrd. His testimony is attacked as being incredible because of the distance between Byrd's car and the one from which Whitt alighted; the glare of the lights; the element of time and observation, and the failure to investigate or make any inquiry about the affair.

It is elementary that the Commonwealth must prove the guilt of an accused beyond a reasonable doubt, and in this case we think the Commonwealth has failed. Officer Byrd's testimony is greatly weakened by the fact that he was 80 feet away from the car from which the accused alighted; that it was dark, though there were some lights on at the filling station; that it was improbable, if not impossible, that he could have seen and positively identified the driver of the car under the circumstances. Certain it is he could not state with accuracy that there were no other persons in the automobile.

The fact that Officer Puryear took no notice of the alleged violation of law by Whitt, that he made no investigation, that neither he nor Byrd went to the car to ascertain if there were others in it or to ascertain who was driving it, though they could have done this in perhaps one minute, weakens Byrd's testimony to such an extent that we do not think a proper verdict could be based thereon.

In *Tester* v. *Commonwealth*, 157 Va. 826, 160 S. E. 62, the court reversed the judgment of the trial court on account of the insufficiency of the evidence, and in doing so, had this to say, at page 834: "We are not unmindful of the rule which requires us to attach great weight to the verdict of a jury which has been approved by the trial court, yet, under section 6363 of the Code, it is the duty of this court to set aside the verdict of a jury and reverse the judgment of the trial court approving it, whenever it appears from the evidence that such judgment is plainly wrong or without evidence to support it. * * *"

In the case of *Warren* v. *Commonwealth*, 144 Va. 669, 131 S. E. 227, the court again reversed the judgment of the trial court on account of the insufficiency of the evidence and concluded with this significant language, at pages 674-675: "Notwithstanding the great weight which is properly attached to the verdict of a jury approved by the trial court, this court has from time to time found it necessary to set it aside because of lack of evidence to support it. A few of the cases in which this has been done are cited by way of illustration of when it is proper to do so. *Grayson* v. *Commonwealth*, 6 Gratt. (47 Va.) 712; *Grayson* v. *Commonwealth*, 7 Gratt. (48 Va.) 613; *Tucker* v. *Commonwealth*, 88 Va. 20, 13 S. E. 298; *Tilley* v. *Commonwealth*, 90 Va. 99, 17 S. E. 895; *McBride* v. *Commonwealth*, 95 Va. 818, 819, 30 S. E. 454; *Montgomery* v. *Commonwealth*, 98 Va. 840, 36 S. E. 371; *Montgomery* v. *Commonwealth*, 98 Va. 852, 37 S. E. 1; *Montgomery* v. *Commonwealth*, 99 Va. 833, 37 S. E. 841; *Canter* v. *Commonwealth*, 123 Va. 794, 96 S. E. 284.

"We recognize the importance of the prompt and efficient enforcement of the criminal law of the State, and that a case should not be reversed by this court for mere formal errors if it is possible to avoid it, but the error here complained of is not merely formal. It goes to the very merits of the case, and a certain degree of proof is required before a man can be deprived of his life or his liberty, and this degree has not been furnished. The protection of the innocent is not less important than the punishment of the guilty. A 'wave of crime' cannot be stopped by the punishment of those of doubtful guilt. Mere suspicion, however strong, will not support a verdict of guilty. The burden is on the Commonwealth to prove the guilt of the accused beyond a reasonable doubt. *Woods* v. *Commonwealth*, 140 Va. 491, 124 S. E. 458; *Cox* v. *Commonwealth*, 140 Va. 513, 125 S. E. 139, and cases cited."

The case at bar comes under the influence of the principles above set forth and applied in the cases to which reference has been made.

The judgment will be reversed, the verdict set aside, and the case dismissed.

*Reversed and dismissed.*