# Richmond

ERNEST THOMAS JONES V. COMMONWEALTH OF VIRGINIA.

ALVIN HALL V. COMMONWEALTH OF VIRGINIA.

December 1, 1969.

Record Nos. 7191 and 7213.

Present, All the Justices.

*S. W. Tucker (Harold M. Marsh; Jack Greenberg* (N.Y.); *James M. Nabrit, III* (N.Y.); *Hill, Tucker & Marsh,* on brief), for plaintiff in error in Record No. 7191 and Record No. 7213.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error in Record No. 7191 and Record No. 7213.

SNEAD, C.J., delivered the opinion of the court.

Ernest Thomas Jones and Alvin Hall, on pleas of not guilty, were convicted at separate trials and on separate warrants charging that each did "unlawfully assemble without the authority of law and for the purpose of disturbing the peace or exciting public alarm or

disorder." Code, § 18.1-254.1(c).[1] A jury fixed the punishment of Jones at confinement in jail for a period of 12 months and a fine of $100. Another jury fixed Hall's punishment at 12 months in jail and a fine of $200. The trial court sentenced both defendants in accordance with the jury verdicts. We granted each defendant a writ of error to his judgment of conviction.

By their assignments of error, both defendants challenge, among other things, the sufficiency of the evidence to sustain their convictions and the constitutionality of that portion of § 18.1-254.1(c), upon which the charge contained in the warrant is based.

Shortly after the assassination of Martin Luther King, on April 4, 1968, there was a series of civil disorders in Richmond. The arrests of Jones and Hall took place during this period.

The pertinent facts which gave rise to the arrest and conviction of each defendant are summarized seriatim below.

## JONES v. COMMONWEALTH

### Record No. 7191

At approximately 8:50 p.m. on April 8, 1968, Sergeant H. A. Conner of the Richmond Police Bureau, another sergeant and eighteen police officers were in a school bus proceeding west on Broad street. They observed a crowd consisting of about thirty persons walking east on the north side of Broad street toward Second street. Most of them were on the sidewalk but some were "darting" between parked automobiles and parking meters. The school bus stopped between Second and Third streets. Members of the group were yelling, cursing and using obscene language. The group crossed Second street against the "Don't Walk" sign. The officers then alighted from the bus, ordered the members of the group to "halt" and with the assistance of other officers proceeded to surround them. The group was contained until patrol wagons arrived at the scene. Thirty or more officers participated.

---

[1] "§ 18.1-254.1. What constitutes riot, rout or unlawful assembly.—As used in this article:

\* \* \* \* \* \*

"(c) Whenever three or more persons assemble with the common intent or with means and preparations to do an unlawful act which would be riot if actually committed, but do not act toward the commission thereof, or whenever three or more persons assemble without authority of law and for the purpose of disturbing the peace or exciting public alarm or disorder, such assembly is an unlawful assembly."

According to Sergeant Conner no one was brought into the group after it was surrounded and only one person escaped. All were taken to the police station and placed in an empty lockup. Jones, the defendant, was among those transported to the police station. No witness could recall actually seeing him with the group at the scene.

After the group had been loaded into police vehicles there were found several bottles, pieces of brick, sticks and two knives on the ground at the scene.

Jones, age 19, an employee of the State Board of Education, testified that he resided in South Richmond, and that on the night of his arrest he left his home around 8 p.m. in his automobile to go to the YWCA on Chamberlayne avenue to consult with a Miss Craddock concerning a driver education class he was to teach. On the way, he said, he turned left on Broad street from Ninth street and proceeded westward with the intention of turning right at Second street. In the three hundred block he pulled his vehicle to the right and stopped to let a police car with "flashing red lights" and a police bus pass. He then noticed that police were directing westbound traffic to turn left at Third street, so he parked his car where he had stopped. After extinguishing his lights and locking the door to his vehicle he said he was immediately approached by an unidentified police officer who took him to the two hundred block of East Broad street where the group was assembled. He was then searched, put in a police vehicle along with members of the group, taken to the police station and remained there in custody until the next day. Jones introduced evidence showing that at 8:05 a.m. on April 9, 1968 his car was tagged in front of 306 East Broad street, where he parked it the night before, for illegal parking.

## HALL v. COMMONWEALTH
### Record No. 7213

The defendant Hall was arrested on the same occasion and at the same time as was defendant Jones. (Record No. 7191, *supra*). The Commonwealth's evidence relating to the events that occurred prior to the defendant's arrest and subsequent thereto was substantially the same as was adduced at the trial of Jones. Suffice it to say that Hall was in the group when it was carried to police headquarters.

Hall, age 25, testified that he resided at 1900 North 29th street; that he met a friend, named Sonny, shortly after 8 p.m. at Adams and Broad streets; that he "was going to walk with him down to the

poolroom" located at Second and Clay streets; that when he reached Second and Marshall streets (one block north of Broad) he changed his mind and decided to go home because he did not feel well, and that he then walked south on Second street toward Broad where he intended to catch a bus.

About forty feet before he reached Broad street he saw the crowd crossing Second street and heard them singing. He said: "* * * [A]s I come around the corner, there was a crowd of people on the same side of the street that I were on and a busload of policeman came on the corner and jumped out and started telling everybody to move back to Second Street and the State Trooper was on the corner of Second, and they came down and push everybody back to Third and they gathered me up in it and somebody say, 'Lock them all up', and so that's what happen, they lock me up with a bunch of people I didn't know anything about, and I had nothing to do with any of them, yelling or saying whatever they said, I was just minding my own business, I was planning to go home, catch the bus there and go home."

"When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it'. § 8-491, Code, 1950; *Toler* v. *Commonwealth*, 188 Va. 774, 781, 51 S.E.(2d) 210, 213; *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S.E.(2d) 603, 606." *Crisman* v. *Commonwealth*, 197 Va. 17, 18, 87 S.E.2d 796, 797.

The burden is upon the Commonwealth to prove the guilt of a person charged with a criminal offense beyond a reasonable doubt. *Warren* v. *Commonwealth*, 144 Va. 669, 675, 131 S.E. 227, 228. Every fact necessary to a verdict of guilty must be so proved. *Burton and Conquest* v. *Commonwealth*, 108 Va. 892, 898, 62 S. E. 376, 379. The Commonwealth must prove the guilt of an accused to the exclusion of every reasonable hypothesis consistent with his innocence. *Spicer* v. *Commonwealth*, 156 Va. 971, 973, 157 S.E. 566.

██ In the cases at bar, the Commonwealth's evidence merely establishes that the defendants were surrounded with the members of a group of approximately 30 people who were walking on Broad street; that some members of the group were yelling, cursing and using obscene language, and that several bottles, pieces of brick,

sticks and two knives were found on the ground where the surrounded group stood. No witness identified the defendants as the persons who were cursing and using obscene language or the possessor of the articles found on the ground. There was no proof that the defendants joined the crowd "for the purpose of disturbing the peace or exciting public alarm or disorder." Thus, the Commonwealth's evidence shows nothing more than presence at the scene. It is well established that mere presence is not enough to support a conviction. *Jones* v. *Commonwealth,* 208 Va. 370, 373, 157 S.E.2d 907, 909.

Upon a consideration of the record before us in each case, tested by the above principles, we are of opinion that the evidence falls short, as a matter of law, of being sufficient to sustain the convictions of defendants Jones and Hall.

Having reached this conclusion, we find it unnecessary to determine whether the challenged portion of § 18.1-254.1(c) is unconstitutional. *Bissell* v. *Commonwealth,* 199 Va. 397, 400, 100 S.E.2d 1, 3.

The judgments of conviction are reversed and the warrants are dismissed.

*Reversed and dismissed.*