12725

SHRAMEK v. WALKER

(149 S. E., 331)

*Mr. Thos. M. Boulware,* for appellant,

*Messrs. Jas. M. Patterson* and *Louis Harley,* for respondent,

August 27, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for damages on account of an assault and battery by the defendant upon the plaintiff which resulted in serious bodily injury to him. The jury rendered a verdict in favor of the plaintiff for $2,500 actual and $1,000 punitive damages. From the judgment entered upon that verdict the defendant has appealed.

The defendant Walker was the proprietor of a store at which the plaintiff Shramek was accustomed to trade. Upon his entering the store upon a certain day, he and the defendant got into a controversy about a past-due account which Shramek owed, as Walker claimed. It developed into an angry one, and Walker, on account of certain remarks made by Shramek, which he considered insulting and which were manifestly so intended, ordered him out of the store. (There is a conflict in the testimony whether the command to leave was made in the first or second stage of the controversy, which will be explained; but for the purposes of this appeal it will be assumed, as Walker testified, that it was made in the first stage). Walker made no effort at this time to enforce obedience to his order, by gentle or other means; on the contrary, he left the scene and went back into his office, at the rear of the store, Shramek remaining where, he was, at the front. In a few minutes (Walker testified a

minute and a half), he returned to the front of the store where Shramek was, with an axe handle in his hand, and repeated his order that Shramek leave the store. He still made no effort to enforce obedience to his order. He testified: "I walked out there and stood right in front of him, and like that was the counter, and I stood there, and I said 'Vance, I told you to get out of here and I do not want anything more to do with you' and he stood for a second and finally *he did start to go out*, and about that time Stuckey and Lee was coming in at the front door, and they were coming in, and he made about two steps, he turned around with his right hand in his pocket, and a cracker-box there in between the two counters, and the counters were very close, and just as he got by the cracker-box he made a quick turn, and after I ordered him out of the store twice, *and did not like to do anything*, and I had no other belief (than) that he wanted to do me some bodily harm, and I hit him with the axe handle."

The blow knocked Shramek to the floor insensible, with a fractured skull, laying him up for several weeks. Later he instituted the present suit for damages.

The law is well settled, as thus expressed in our own case of *State v. Lazarus*, 1 Mill, Const., 34: "The prosecutor having business to transact with him, had a right to enter his house, and if he remained after having been ordered to depart, might have been put out of the house, the defendant using no more violence than was necessary to accomplish this object, and *showing to the satisfaction of the Court and jury, that this was his object*." And in 2 R. C. L., 559: "It is a well-settled principle that the occupant of any house, store, or other building, has the legal right to control it, and to admit whom he pleases to enter and remain there, and that he also has the right to expel from the room or building any one who abuses the privilege which has been thus given him. Therefore, while the entry by one person on the premises of another may be lawful, by

reason of express or implied invitation to enter, his failure to depart, on the request of the owner, will make him a trespasser and justify the owner in using reasonable force to eject him. The most common cases involving the right of an owner to eject one from his premises who entered lawfully, are those where a person enters a hotel or business place or the conveyance of a common carrier and while therein forfeits his right to remain by his misconduct or failure to comply with the reasonable rules and regulations. On the forfeiture of his right he becomes a common trespasser and may be forcibly ejected on failure to depart after a request to do so." See also 5 C. J., 745.

An exceedingly clear statement of the rule is found in *Watrous v. Steel*, 4 Vt., 629, 24 Am. Dec. 648: "It is a well-settled principle that the occupant of any house, store, or other building, has a legal right to control it, and to admit whom he pleases to enter and remain there, and that he has also a right to expel any one from the room or building who abuses the privilege which has been thus given him; and if the occupant finds it necessary, in the exercise of his lawful rights, to lay hands on him to expel him he can legally justify the assault."

Under the circumstances stated, the wrongful status of the intruder or unwelcome guest, as a trespasser, will have been established; and equally so the right of the lawful occupant of the premises to use such force as may be reasonably necessary to eject the one who is in the wrong.

The mode in which this unquestioned right should be exercised has been called in question by the defendant's exception to the following charge in his Honor, Judge Bonham: "If, however, one go to a place of that character on a lawful mission, and he so conducts himself as to become offensive to the proprietor of that establishment, the proprietor has the right to eject. Now how must he eject him? He must proceed, first, by ordering him to leave the premises, if he declines to go, and does not go,

*he must first, use gentle means, and lay his hands upon him gently,* if he resents and refuses to go, the proprietor of the establishment may use whatever force is necessary to eject the trespasser; but he must not use more than is necessary, reasonably necessary than for that purpose."

The appellant insists that this charge was erroneous in declaring that, regardless of the circumstances attending the altercation, it was the duty of the defendant, after ordering the plaintiff to leave the store, to "first use gentle means, and lay his hands upon him gently if he refuses to go."

As there was no evidence tending to show that the defendant complied with this condition, he insists that the imposition of it was prejudicial error.

It is conceivable that under certain circumstances it would be entirely proper, and perhaps necessary, that after the intruder (which expression would include both one entering without permission, express or implied, and one who had entered with such permission and had forfeited his right to remain) had been told to leave, the occupant should follow the order with the gentle laying of hands upon him to induce obedience, it is manifest that a hostile attitude on the part of the intruder would not only render the laying on of hands unnecessary, but would almost certainly precipitate a personal encounter. It would be best to declare the right of the occupant to be, after the intruder had forfeited his right to remain, to order him to leave, and upon refusal to use such force as might be reasonably necessary to eject him, leaving the question of the necessity and propriety of laying on hands out of the declaration, as a matter for the consideration of the jury in determining the reasonableness of the means of ejection.

It was erroneous therefore to impose the condition of gently laying his hands upon the plaintiff to all conceivable circumstances.

The error, however, was harmless in the present case, for the reason that the defendant offered no evidence tending to show that he struck the plaintiff in the

exercise of his unquestioned right to eject him from the store, or that it was a reasonable exercise of that right.

The altercation, verbal and physical, consisted of two separate and distinct stages: The controversy in angry fashion at the front of the store, and the later attack by the defendant with the axe handle.

The defendant does not claim at either stage to have been making an effort to eject the plaintiff. All that he did in the first stage was to order him to leave; and all that he did in the second stage was to do the same thing with a show of unusual force. His defense was self-defense; that the plaintiff, who had started to leave, turned sharply around and made a gesture from which he apprehended a personal attack, to prevent which he struck. So far from attempting to eject the plaintiff, he adopted the most effective method of making it impossible for him to leave.

As is pertinently remarked by the Court in the *Lazarus case*: "The prosecutor having business to transact with him, had a right to enter his house, and if he remained after having been ordered to depart, might have been put out of the house, the defendant using no more violence than was necessary to accomplish this object, and showing to the satisfaction of the court and jury, that this was his object. *But here the beating was cruel and excessive, not calculated, either from its extent or manner, to produce the pretended object of the defendant, but on the contrary, rather calculated to prevent him from going.*"

His Honor, Judge Bonham, gave a full and clear charge as to the defense of self-defense which the jury resolved against the defendant. There necessarily remained the fact, even if the defendant was attempting to exercise his right to eject the plaintiff, that an inexcusable and dreadful blow was inflicted upon the plaintiff, entirely out of proportion to what could be considered a reasonable exercise of that right; rather "the indulgence of ungovernable or revengeful spirits"; a conclusion which could not possibly have been affected by

the alleged error in the charge; for if the Judge had charged the jury that the defendant was under no obligation first to lay his hands gently upon the plaintiff, it would have been impossible for the defendant to have escaped from the disproportionate and fearful assault.

In note to *Hannabalson v. Sessions,* 93 Am. St. Rep. 257, it is said: "A mere trespass upon the land of another, even after the trespasser has been warned to depart and has refused, does not justify the landowner in using a dangerous or deadly weapon to resist the trespass, and if the landowner shoots or otherwise injures the trespasser with a deadly or dangerous weapon, not in necessary self-defense, he is liable for the damages caused thereby"— citing *James v. Hayes,* 63 Kan., 133, 65 P., 241; *Everton v. Esgate,* 24 Neb., 235, 38 N. W., 794; *Montgomery v. Com.,* 98 Va., 840; 36 S. E., 371; Id., 98 Va., 852, 37 S. E., 1. See also, *Golden v. State,* 1 S. C., 292; *Harris v. Marco,* 16 S. C., 575; *Davis v. Whitridge,* 2 Strob., 232; *Barnes v. Martin,* 15 Wis., 240, 82 Am. Dec., 670; note 25 A. L. R., 553.

Exception is taken to the Judge's charge, in speaking of compensatory damages: "In arriving at a verdict on that line, if you conclude that the plaintiff is entitled to recover, you are to take into consideration any pain or suffering *he may undergo,* and any expense to which he has been put by way of medical attention, and hospital fees, and the like, and any loss he may have sustained from the loss of employment in coming from his employment, and any diminishment of the earning capacity of the man hurt. Those are the elements in the meaning of compensation."

· The contention is that: "The charge permitted the jury to enter into the field of conjecture as to possible suffering and injury and to assess actual damages for such suffering as the plaintiff 'may undergo' in the future from the alleged injury; whereas, the defendant is liable only for such suffering as it is reasonably certain will, of necessity, result in the future from the injury."

We think that the word "may," objected to, was used in the sense of futurity, synonymous with "will," and not involving the objectionable element of chance or speculation contained in the words "liable" and "might," condemned in *Green v. Catawba Co.,* 75 S. C., 102, 55 S. E., 125, 9 Ann. Cas., 1050, and *Lockhart Co. v. Askew,* 110 S. C., 449, 96 S. E., 685. In view of the immediate context, "actual or compensatory damages are those which compensate one for the injury that he sustained," we cannot think that the jury was led to the realm of conjecture. We rather think that it was one of the microscopic errors close to the border line of inadvertent statements to which attention should have been called.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. CHIEF JUSTICE WATTS did not participate.

MR. ACTING ASSOCIATE JUSTICE GRAYDON (concurring in result) : I concur in result.

MR. JUSTICE CARTER (dissenting) : I am in accord with the views expressed in the opinion of Mr. Justice Cothran in overruling the exception imputing error to the presiding Judge in his charge on the measure of damages, and also agree with the view stated as to it not being the duty of the proprietor to gently lay his hands upon the trespasser as a necessary step to exercise the right of the use of force in ejecting the trespasser; but I do not agree with the position that there was no evidence that the defendant was, at the time he struck the plaintiff, attempting to exercise his right to eject the plaintiff. I think there was some testimony to be considered by the jury on this issue. Take, for instance, the following testimony of the witness Ussery, who testified on behalf of the defendant:

"A. P. Ussery, sworn says: I was clerking for Mr. Walker. He went back to the office and in about 3 minutes

Mr. Shramek went back and I heard them saying something about a bill. Mr. Shramek came out first and leaned up just above the ice box and later Walker came out.

"Q. Tell us what took place between them? A. Mr. Vance (Shramek) said, pay you a penny, or a dollar, or God damn else, and then Mr. Walker ordered him (Shramek) out of the store, and he did not go, and he (Walker) returned to the office, and come back, and I seen he had an axe-handle.

"Q. Which hand did he have it in? A. Right hand.

"Q. What happened then? A. And he ordered him (Shramek) out again, and he (Shramek) did not move, and finally he (Shramek) took about three steps and wheeled around.

"Q. Who took three steps? A. Mr. 'Vance' (Shramek).

"Q. Which way was he going? A. Starting toward the door.

"Q. And started toward the door, and took three steps, and what did he do? A. Turned around.

"Q. Where did he have his hand when he turned around? A. He had his right hand in his front pocket.

"Q. You say, he had his right hand in his front pocket? A. Yes, sir.

"Q. And turned around, and who was he facing when he turned around? A. Mr. Walker, and just as he turned around Mr. Walker hit him.

"Q. With what? A. The axe-handle."

Also take the testimony of the defendant, Walker, on this point:

"A. After that he (Shramek) walked on out of the office, and went and leaned up by the side of the ice box, and leaned up with his feet out this way. I walked on out and asked him the question, and I said, 'Vance,' how long have you been owing this thing, and he said God damn whole year, and I said, well are you going to pay it. And he said, I will not pay one cent, one dollar, or a God damn thing, or else, and grinned in my face. I told him I wanted him to get

out of here, and I meant for him to stay out, I do not want anybody that will get my groceries, and insult me, and my clerks in the store about it. I turned around and I walked back to the office. I stayed in there, I suppose a minute and a half, or possibly two minutes, and he was still there, and I saw a piece of axe-handle, and they called it a big hickory stick, and we used it there to hold up the window, and it was not salable, and could not sell the axe-handle, and split right where the handle goes in the axe, and split off just like a shovel. I walked out there, and stood right in front of him, and like that was the counter, and I stood right there, and I said, 'Vance,' I told you to get out of here, and I do not want anything more to do with you, and he stood for a second and finally he did start to go out, and about that time Sturkey and Lee was coming in at the front door, and they were coming in, and he made about two steps, he turned around with his right hand in this pocket (witness indicating) and a cracker box there in between the two counters, and the counters were very close, and just as he got just by the cracker box he made a quick turn, and after I ordered him out of the store twice, and did not like to do anything and I had no belief that he wanted to do me some bodily harm, and I hit him with the axe-handle.

"Q. I notice you motioned with your right hand. You left handed? A. No, sir.

"Q. You hit him with the axe-handle with your right hand. Where did you hit him? A. On the left side right about there.

"Q. He was not walking out of the store like he said, with his back to you when you hit him? A. When he started to walk out and he turned around.

"Q. And you hit him after he had turned around facing you? A. Yes, sir."

Whether this testimony was true or not is not within the province of this Court to say, but in my opinion it was certainly some testimony to be considered by the jury on the

question now under consideration, and made an issue for the jury as to whether or not the defendant was at the time he struck the plaintiff attempting to exercise his right to eject the plaintiff. Neither do I agree with the position that the defendant's pleas of self-defense are a negation of any purpose on his part to put the plaintiff out of his store. As I view the testimony quoted above, if the same is to be believed, which is a question for the jury, it cannot be said that there was an absence of any effort on the part of the defendant to exercise his right to eject the plaintiff. In my opinion the two pleas are not inconsistent, and the interposing of one is not a negation of the other. The exercising of the right to eject a trespasser may and often does bring on a personal difficulty, but this is no reason why a proprietor under such circumstances should be denied the right to plead the law of self-defense, if he meets the requirements, and neither should he be denied the right with which he as proprietor under the law is clothed because he sets up the plea of self-defense when he strikes the trespasser at the time the trespasser is attempting to inflict serious bodily injury on him (the proprietor). Such is the position the defendant was placed in, if the above-quoted testimony is a correct statement of what transpired. Whether that statement is true is a jury question and not a question for this Court.

In my opinion the charge that the proprietor "must first use gentle means and lay his hands upon him (the trespasser) gently" was error, and this Court cannot say that the charge did not influence the verdict. This error was not corrected elsewhere in the charge. I therefore dissent from the majority opinion and think that the judgment of this Court should be that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.

Let the exceptions and the Judge's charge be reported.