John Wesley CARTER, Appellee,

v.

Troy Joe LYNCH, Jr., Appellant.

No. 13778.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1970.

Decided July 9, 1970.

Rogers W. Kirven, Florence, S. C.
(Matthew J. Perry, Columbia, S. C., on
brief) for appellant.

Robert J. Thomas, Columbia, S. C.
(John Gregg McMaster, Columbia, S. C.,
on brief) for appellee.

Before HAYNSWORTH, Chief Judge,
and BRYAN and BUTZNER, Circuit
Judges.

ALBERT V. BRYAN, Circuit Judge:

A civil judgment of damages in favor
of John Wesley Carter against Troy Joe
Lynch, Jr. and an order refusing dis-charge from a civil arrest for contempt
for failure to pay it, are now appealed.
We uphold these judgments of Judge
Hemphill in the South Carolina Federal
Court.

I.

The jury awarded $50,000 damages
for physical assault of Carter by Lynch—
an aggregate of $15,000 compensatory
and $35,000 punitive. The verdict was
reduced to $27,500 on acceptance of an
order of remittitur.

The facts are these. Around 9 o'clock
the night of December 21, 1966, Carter
was brutally attacked by Lynch on the
street in front of the latter's place of
business. He suffered bone fractures as
well as severe lacerations and abrasions.
A broken ankle is now prognosed as a
permanent injury.

Testimony to the affray was conflict-
ing. Lynch's account was that Carter,
intoxicated, came to his office and
was very abusive. Asked to leave, Carter
returned to his car. However, according
to Lynch, Carter walked to the entrance
door again, where Lynch was standing
and struck him. Whereupon Carter was
forcibly ejected from the premises by
Lynch.

Carter admitted going to Lynch's of-
fice, acknowledged he had been drinking,
but denied he was drunk. His statement
was that Lynch had become offensive,
accusing Carter of reporting him to the
Federal authorities as involved in an il-
legal still operation. Carter also said
that as he was backing his car out onto
the road, Lynch called for him to stop.
As he got out of his automobile Lynch
set upon him.

Thereafter, on August 2, 1967, before
the instant complaint was filed on Janu-
ary 11, 1968, Lynch transferred more
than 855 acres of improved land, valued
at $40,000, to his mother. No money
passed; the purported consideration was
the satisfaction of a preexisting debt.
The obligation was not a personal lia-
bility but was owed by Lynch Grain
Company, in which Lynch owned one
share of stock.

Lynch's mother, six days after the verdict, deposited $40,000 in trust for the benefit of Lynch's minor children. In addition, evidence indicated that Lynch had sold most of his personalty. In any event, the execution on Carter's judgment was returned nulla bona.

Appealing the District Court's denial on June 6, 1969 of a motion for judgment non obstante or, in the alternative, for a new trial, Lynch contends that (1) he was exercising his right under South Carolina law to remove a trespasser from his property; (2) he was acting in self-defense; and (3) damages were so excessive as to disclose that the jury was moved by passion or prejudice.

■ Of course the jury was entitled to believe from the conflicting proof that Lynch did recall Carter. If so, Carter was not a trespasser, but an invitee, and Lynch had no right to expel him. Cf. Shramek v. Walker, 152 S.C. 88, 149 S.E. 331, 336 (1929). Moreover, the jury's resolution of Lynch as the aggressor and his physical superiority to Carter, both questioned Lynch's plea of se defendendo. In any event, the issue was for the jury. Finally, the quantum of both the actual and punitive damages had generous evidential foundations. The verdict was rightfully accepted.

## II.

Lynch also appeals Judge Hemphill's commitment of him for contempt, for non-payment of the judgment, under the Code of Laws of South Carolina, § 10-802(6),[1] and the judge's refusal to order his discharge from custody under sections 10-841 through 10-859.

This decision followed on Carter's pains to enforce the judgment. When Lynch answered that he had no assets to satisfy the claim, Carter sought to execute upon the person of the judgment debtor. To this end he applied to the District Court for an order effectuating the arrest as authorized by section 10-1705[2]. On June 23, 1969 Judge Hemphill ordered Lynch into the custody of the United States marshal, but allowed him to remain at his home until July 1, when he was to appear before the District Court and "show cause, if any he can, why the [arrest order] should not be made permanent."

Upon the July 1 hearing, the Court refused to release Lynch unless he filed a $30,000 supersedeas bond to answer the judgment of damages. On July 3 Lynch petitioned Judge J. Braxton Craven, Jr. of this Circuit for his release on habeas corpus. The application was denied on July 7, 1969 with the statement by the judge that Lynch

> "can walk out of jail at any time that he convinces either the United States District Judge or the United States Commissioner (28 U.S.C. § 2007) that he is not fraudulently concealing or fraudulently retaining property that he has previously concealed and has relinquished or is willing to relinquish all property over which he has practical control to the payment of his debt."

■ Waiving the jury trial afforded him on these issues under section 10-849,

---

1. § *10-802. Arrest in civil actions permitted in certain cases.*—The defendant may be arrested, as prescribed in this article, in the following cases:

   \*   \*   \*   \*   \*

   (6) In an action for the recovery of damages in a cause of action not arising out of contract when the defendant is a nonresident of the State or is about to remove therefrom or when the action is for an injury to person or character or for injury to or for wrongfully taking, detaining or converting property.

2. § *10-1705. Execution against the person.*—If the action be one in which the defendant might have been arrested, as provided in § 10-802, an execution against the person of the judgment debtor may be issued to any county within the jurisdiction of the court after the return of an execution against his property unsatisfied in whole or in part. But no execution shall issue against the person of a judgment debtor unless an order of arrest has been served, as in this Code provided, or unless the complaint contains a statement of facts showing one or more of the causes of arrest required by § 10-802.

Lynch endeavored to convince the District Judge at a hearing on July 18, 1969 that he was neither fraudulently concealing his property from levy, nor falsifying his schedule of assets. Disbelieving Lynch, the judge on July 22, 1969 refused him release. We cannot say  that this finding was clearly erroneous and we affirm it.

This order, from which Lynch now appeals, again offered him freedom on giving a $30,000 supersedeas bond. He ultimately gained relief from Chief Judge Haynsworth of this Circuit, who, treating a renewed petition for habeas corpus as an application for bail pending appeal, required endorsement of the bond by Lynch's mother as surety and conditioned it upon further order of this court.

The appeal of the July 22 order impugns, though imprecisely, the Constitutionality of both the arrest statute, section 10–802(6), and the provisions detailing the method of release, sections 10–841 through 10–859. Despite some question of whether Lynch waived this contention, we turn to his imputations.

██ The main foray on 10–802(6) is that it violates the South Carolina Constitution's prohibition on imprisonment for debt. S.C.Const. art. 1, § 24. But as the statute is explicitly limited to actions "for the recovery of damages in a cause of action not arising out of contract", and as the Constitutional provision relates solely to debts ex contractu, this instance, arising from a debt ex delicto, does not fall within the proscription. So much has been repeatedly declared by the South Carolina Supreme Court. See, e. g., Stidham v. DuBose, 128 S.C. 318, 121 S.E. 791 (1924); Ex parte Berry, 85 S.C. 243, 67 S.E. 225 (1910). We must accept these declarations of the State law, as they do not violate the Federal Constitution. Cf. NAACP v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

Discharge from the civil arrest is provided by sections 10–841 through 10–859. For his release a judgment debtor is required to make a full accounting of all of his property, supported by an oath that he has made no transfers, either before or after suit was instituted, to defraud his creditors. An assignment of the listed properties must then be made. Code of Laws of South Carolina, §§ 10–844 through 10–846.

██ Lynch asserts that this whole procedure is "unconstitutional", particularly because it placed upon him the burden of "convincing" the Court that the schedule was true. Such an obligation is not without precedent in comparable circumstances. An example may be seen in the steps demanded of the applicant for a writ of habeas corpus. There, as here, the burden is on the party seeking release. Hall v. Warden, Maryland Penitentiary, 313 F.2d 483, 487 (4 Cir.), cert. denied sub. nom. Pepersack, Warden v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032 (1963). By like reasoning, we conclude that the instant burden was not unduly placed, and therefore that the procedure in this regard weathers Constitutional attack.

Lynch also attacks these release sections as "clearly unconstitutional" in that they allow continued incarceration despite the absence of the ordinary criminal processes. The challenge is grounded upon the Fourteenth Amendment as an illegal deprivation of liberty. Yet for such deprivations to offend the Federal Constitution, it is of course imperative that they be accomplished without "due process of law". We see no such offense presently. If the attack be interpreted as directed at the procedure prescribed in sections 10–841  through 10–859—demanding an accounting of property possessed or disposed of—it fails. These are more than sufficient to ensure fairness in the critical exploration. In the instant case, the safeguards were scrupulously met.

██ Further, if the argument is that the arrest and release statutes are violative of substantive due process as not a proper subject of legislation, it is likewise meritless. These laws are not so lacking in rational basis that they are Constitutionally infirm. See Holmes, J.

dissenting in Lochner v. New York, 198 U.S. 45, 74, 25 S.Ct. 539, 49 L.Ed. 937 (1905). While undoubtedly harsh in implementation, the arrest and release sections—10–802(6) and 10–841 through 10–859—are well within the State's power to secure enforcement of the judgments of its courts. As Chief Justice Hughes observed:

> "When the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome." Sproles v. Binford, 286 U.S. 374, 388–389, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932).

In sum, the evidence adduced in this case was abundant to support the District Court's rejection of the claim for release.

The final question is what now should be the course of the Court below. Section 10–848, Code of Laws of South Carolina,[3] authorizes the imposition of perjury penalties as well as liability for re-arrest if the schedule of assets be found false. But as this proceeding is essentially civil we do not believe, as apparently the District Judge did not, that in the present posture of the case the penalties of perjury should be imposed. They partake of a criminal cast and a serious Constitutional question might arise if they were applied when, as here, they are not preceded by traditional criminal processes. Whether to pursue them in this case is a matter for the determination of the District Judge. For the present it is enough to conclude that Lynch is subject to rearrest and detention under section 10–802(6), footnote 1, supra, the authority for the original arrest.

By this determination we do not mean to foreclose reconsideration of the issue of Lynch's inability to pay on a resubmission of a schedule of assets supported by the proper oath. Detention of the debtor for non-compliance leads to the question of how long the detention may continue. The same problem is presented upon the failure of a bankrupt to obey a turnover order. It was discussed quite thoroughly in Maggio v. Zeitz, 333 U.S. 56, 76, 68 S.Ct. 401, 92 L.Ed. 476 (1948).

The answer there, as it is here, was that this was a balance to be struck by the trial judge from time to time. We leave enforcement of the orders in this case, herein found to be sound and approved, to the judgment of the District Court.

Affirmed.

---

3. § *10–848. Penalty for false schedules.*
—Any person who shall deliver in a false schedule of his effects shall suffer the penalties of wilful perjury and shall be liable to be arrested again for the same action.