**Thomas L. GRIMES, on his own behalf and on behalf of all others similarly situated, Plaintiff,**

v.

**Patricia L. MILLER, Individually and on behalf of herself and all others similarly situated, et al., Defendants.**

No. C–76–220–S.

United States District Court,
M. D. North Carolina,
Salisbury Division.

Heard Feb. 24, 1977.

Decided April 12, 1977.

Wilson O. Weldon, Jr., Lambeth, McMillan & Weldon, Thomasville, N.C., and Barry Nakell, Chapel Hill, N.C., for plaintiff.

Rufus L. Edmisten, Atty. Gen., and Norma S. Harrell, Associate Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for defendants.

Before CRAVEN, Circuit Judge, GORDON, Chief District Judge, and WARD, District Judge.

## MEMORANDUM OF DECISION

CRAVEN, Circuit Judge:

This is a suit brought before a duly constituted three-judge court in which the plaintiff seeks to prosecute both a personal and class action for the purpose of declaring N.C.Gen.Stat. §§ 1–311 and 1–410 to be unconstitutional, to enjoin enforcement of the statutes, and to have and recover from the defendant Miller the sum of $100.

### I.

We find the essential facts to be as follows:

In 1973 Patricia L. Miller, a professional stockcar racer, delivered her 1972 Pinto automobile to Thomas L. Grimes who contracted to rebuild it, including the installation of a bigger engine, and to make other alterations for the purpose of improving it for stockcar racing. Instead of doing the work as promised, Grimes cannibalized Ms. Miller's Pinto so that when she finally recovered it in May 1974 there was nothing left but the frame and body shell. Ms. Miller thereupon sued Grimes (and his wife) in the Superior Court of Davidson County and alleged, inter alia, that Grimes never intended to do the promised work, but instead intended to cheat and defraud the plaintiff and to maliciously destroy her automobile, using the parts of it to repair and rebuild other cars he was working on. The complaint further alleged that Grimes owned a pro-stock dragster built by Petty and worth about $18,000 and that the Petty car had been transferred to Grimes' wife

without any consideration and for the purpose of defrauding creditors.

The prayer for relief included a request for damages, punitive damages, and a declaration of a constructive trust over the Petty vehicle and, most importantly, a request that appropriate issues be submitted to and answered by a jury to determine if the remedy of execution against the person, pursuant to N.C.Gen.Stat. § 1–311, would be available for satisfaction of any judgment the plaintiff might obtain, in the event any execution against defendant's property should be returned unsatisfied.

The defendants Grimes were duly served with the complaint and summons, and upon their failure to respond, default was entered by the Assistant Clerk of the Superior Court of Davidson County. The Honorable John D. McConnell, Judge of the Superior Court, proceeded in an ex parte hearing to find facts and embodied them in a judgment, the most significant of his findings being as follows:

> When Ms. Miller turned the car over to Grimes, its fair market value as a race car was $6,500. Over a period of many months Grimes failed and refused to perform his contract to rebuild the Pinto and instead converted its parts to his own use; that he did so intentionally, willfully, and maliciously, and with the intent to defraud Ms. Miller and accomplished his purpose. When the vehicle was recovered its fair market value was only $150 so that Ms. Miller sustained a net loss of $6,350. The judge also awarded $5,000 as punitive damages against Grimes and adjudged that because of his intentional, willful, malicious, and fraudulent conversion of the plaintiff's automobile the plaintiff was entitled to execution against the person of Grimes pursuant to N.C.Gen.Stat. §§ 1–311 and 1–410.[1] No findings were made with respect to the alleged fraudulent transfer of assets.

Upon motion of the plaintiff the court dismissed the complaint against Mrs. Grimes but did so without prejudice.

After execution against Grimes' property had issued and was returned unsatisfied, the Clerk of the court, on January 15, 1975, and again on May 23, 1975, issued an execution against the person of Grimes.

Grimes temporarily fled the jurisdiction to Florida, either to prevent his arrest for passing bad checks or to prevent his arrest in the civil case. The Sheriff finally caught him at home on July 30, 1975, and put him in the Davidson County Jail. Grimes' wife thereupon sought to obtain legal counsel for her husband in order to gain his release from jail. She was not immediately successful, but whether that was because of an inability to pay an attorney's fee as alleged, or for other reasons, we are unable to determine. She finally discovered an attorney in Thomasville who accepted employment and agreed to represent Grimes without fee. Soon thereafter counsel filed for Grimes a writ of habeas corpus, denied by Judge Chrissman, and then filed a petition for discharge pursuant to the "insolvent's oath" provisions of N.C.Gen.Stat. §§ 23–29 through 23–38. Proper advance notice was given to judgment creditor Ms. Miller, and after the statutory 20-day period which the creditor is allowed to research the debtor's solvency, Grimes was examined by Miller's attorney before the Clerk of Superior Court of Davidson County. The Clerk adjudged that Grimes had no assets in excess of $50 and ordered his release on September 17, 1975. He had been in jail 49 days.

After his release Thomas L. Grimes filed this suit under 42 U.S.C. § 1983 (and appropriate jurisdictional statutes) against creditor Miller, Hugh Shepherd, Clerk of Superior Court, and Paul D. McCrary, Sheriff of Davidson County.

## II.

Upon the foregoing findings of fact we make these conclusions of law [2] with respect to the issues as presented *seriatim*:

---

1. N.C.Gen.Stat. § 1–410 describes the kind of cases (fraud, malicious injury, etc.) in which body execution may issue. It is a part of Art. 34 entitled "Arrest and Bail." All of Art. 34 relates to *pre* judgment detention. It is N.C. Gen.Stat. § 1–311 that (by incorporative reference to Art. 34) provides for *post* judgment body execution in such cases.

2. Although abstention has been urged upon us by neither side, we have considered and rejected its application to these facts. There is here

## A.

■ Is plaintiff Grimes entitled to challenge the constitutionality of *pre*judgment boúy execution? We think Grimes lacks standing to support his attack upon Article 34, "Arrest and Bail," of the North Carolina General Statutes (§§ 1–409 *et seq.*), which provides for *pre*judgment body execution. Ms. Miller did not seek to occasion the arrest of Grimes until after the entry of default judgment and after further findings óf fact by the judge of the Superior Court. Nor does it appear that any other creditor of Grimes has threatened him with *pre*judgment body execution or begun any proceedings to effect it or, for that matter, that clerks or judges in fact continue to issue "mesne" executions with no preliminary findings of fact. *Cf. Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). Grimes has no more interest in his attack upon the *pre*judgment arrest and bail statutes of North Carolina than has any other debtor described in N.C.Gen.Stat. § 1–410. With an exception not here relevant, it is settled that one may not maintain an attack upon the constitutionality of a state statute without showing that he has been threatened with prosecution or injury. *Boyle v. Landry,* 401 U.S. 77, 81, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). Federal courts do not sit to render advisory opinions. There must be a case or controversy and there is none unless Grimes is able to show a "personal stake in the outcome of the controversy". *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

## B.

■ The attack upon the constitutionality of N.C.Gen.Stat. § 1–311 is an entirely different matter. That statute relates to *post*judgment execution against the body of a debtor. Grimes has standing and a

neither a pending state proceeding of any sort to which we might defer, *cf., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) *and Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), nor a statuto-

personal interest sufficient to constitute a genuine case or controversy. Having been imprisoned once under that section, he has expressed his not unreasonable fear that, due to his outstanding debts, he is in danger of imprisonment at the instance of other creditors. Nor does his present freedom moot his claim. The situation is one of alleged injury "capable of repetition, yet evading review", epitomized by *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We may judicially notice that it is scarcely possible to achieve final adjudication of a constitutional claim in a federal district court within the 49-day period of imprisonment suffered by Grimes. Unless we should assume that some indigent debtor will languish in jail for six months or longer, and there is nothing in the record to suggest it occurs, it would be impossible ever to adjudicate the constitutionality of the *post*judgment body execution statute in this forum. Nor is Grimes' situation like that of the appellees in *Juidice v. Vail,* ─── U.S. ───, 97 S.Ct. 1211, 51 L.Ed.2d 376 (decided March 22, 1977). His was not simply an overnight detention until he paid a fine. Nor was he imprisoned for contempt of court. Most importantly, unlike the complainants in *Vail* Grimes *does* allege he is still indebted to other creditors and may be again put in jail, *see id.* at ─── n. 9, 97 S.Ct. at 1216.

Because the challenged action is "capable of repetition, yet evading review," and because it cannot be said with reasonable assurance that the plaintiff will not be imprisoned again at the instance of another creditor, the statute continues to affect Grimes' liberty interest and his claim is not moot.

## C.

Class Actions. We decline to certify the classes Grimes seeks to represent. For the reasons previously stated, Grimes is obviously an inappropriate person to represent others who may have been imprisoned pur-

ry ambiguity whose resolution by the state courts might obviate any need for constitutional adjudication. *Cf. Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

suant to Art. 34 N.C.Gen.Stat. §§ 1–409 *et seq.* As for his representation of others against whom body execution has issued *after* judgment, we view his prayer as conditional: that if his own claim is mooted because he is now at liberty, the claims of those who are now imprisoned are alive and he is their proper representative. But since we have held that Grimes' claim is not moot and that he has sufficient standing and personal interest to prosecute, there is no occasion or necessity to preserve the claim; and the question can be decided without certification of a plaintiff's class.

### D.

■ Is N.C.Gen.Stat. § 1–311—and its basic theme of "civil" imprisonment—unconstitutional as a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment? No, as we construe it.

Contrary to Grimes' contention, the thrust of the statutory scheme is not against indigents and in favor of solvent persons. In a fair proceeding, which he chose not to attend, Grimes was found by a judge of the Superior Court to be a cheat and a fraud who maliciously converted Ms. Miller's property to his own use. It is true the judge made no findings as to concealment or fraudulent disposal of property, but it is also true (from Grimes' own affidavit), that he had fled the jurisdiction to avoid prosecution for somewhat similar offenses, if not this one. (*When* and to what extent there must be findings of fraudulent concealment or disposal is a difficult question and one that is discussed below. *See* subsection F.1. *infra.*) It is not irrational for the General Assembly to view execution against the body (which may issue only upon a judgment, an express finding of fraud, and a writ of *fieri facias* returned nulla bona) as a step both necessary and reasonably calculated to compel disclosure of possibly hidden assets. The dichotomy urged by Grimes is simply not true: that a rich man is released and an indigent languishes in prison. Sometimes a propertied person also languishes. *See Carter v. Lynch,* 429 F.2d 154 (4th Cir. 1970).

Even if we were disposed to hold otherwise, we would be bound by the *Lynch* case. There Judge Hemphill proceeded pursuant to 28 U.S.C. § 2007 (itself a congressional recognition of the validity of state arrest and bail statutes) to keep a debtor imprisoned until he disgorged assets fraudulently diverted to his mother to prevent execution of a valid judgment. The South Carolina statutory scheme is not dissimilar to the one under attack here; and the basis of the constitutional attack upon each was its alleged deprivation of liberty under the Fourteenth Amendment. Speaking for the Fourth Circuit, Judge Bryan said that such arrest and release statutes are not violative of substantive due process. We think the equal protection attack is also without merit because the thrust of the statute is simply against all debtors who have defrauded or committed other torts (*see* N.C.Gen.Stat. § 1–410)—some of whom may later prove to be indigent and some of whom, as in *Carter v. Lynch, supra,* are well off and are concealing substantial assets.

### E.

■ Grimes' contention that 49 days of imprisonment constitutes cruel and unusual punishment in violation of the Eighth Amendment is premised on his contention that he is being put in jail because he is an indigent. Again, we think he was put in jail because he was a cheat and a fraud and for the purpose of compelling disclosure of his assets. We view the contention of cruel and unusual punishment as wholly without merit.

### F.

Do the North Carolina body execution statutes fail to provide sufficient procedural due process? This is the difficult question in the case:

### 1.

N.C.Gen.Stat. § 1–311 requires that facts be found by a jury or by a judge "establishing the right to execution against the person". Judge McConnell apparently assumed that findings of Grimes' fraud on Miller were sufficient to invoke the authori-

ty of N.C.Gen.Stat. § 1–410 and that it was not necessary to make findings, either provisionally or finally, with respect to the allegation in the complaint that Grimes had fraudulently diverted an asset to cheat his creditors. So far as we can ascertain Judge McConnell's interpretation is not inconsistent with decisions of the State's highest court. But also, so far as we know, the state courts have not been presented with the federal question that has been brought to us.

■ The question can be framed this way: consistently with Fourteenth Amendment requirements of procedural due process, can a debtor be thrown into prison simply upon findings that he has cheated his creditor or done other bad things defined in N.C.Gen.Stat. § 1–410? If we were to answer that question, "Yes," the statutory scheme becomes penal: for to imprison someone because he has wronged another, and for no other reason, is within the province of the criminal law. Since the scheme does not provide the constitutional protections that surround one accused of crime, we should thus be compelled to hold it unconstitutional. We think, however, that if the question were presented to the State's highest court it would construe the statutory scheme, in order to save it, as not being strictly penal in nature. It is clear that the legislature has not intended its body execution statutes to constitute a system of imprisonment for debt. On the contrary, ordinary debtors are not subject to execution against the person. Only those found to have committed fraud or similar malefactions (with the right of jury trial if requested) were intended to be subjected to imprisonment. That is because the heart of the legislative scheme is to provide wronged creditors a means for both compelling the disclosure and preventing the concealment of their assets by those who have shown that they might otherwise be less than honest. Surely that is the primary purpose—for the legislature has provided that whenever the debtor demonstrates that he has no assets to hide he is to be released. N.C.Gen. Stat. §§ 23–34 & 23–37.

■ We think the release provisions of the body execution scheme are valid expressions of a legislative balancing of the interests involved, provided, however, that N.C. Gen.Stat. § 1–311 is interpreted to mean that when the court finds the facts "establishing the right to execution" it must find probable cause to believe that the debtor whose imprisonment is sought either (a) is about to flee the jurisdiction to prevent paying his creditors, (b) has concealed or diverted assets in fraud of his creditors, or (c) will do so unless immediately detained.

Although this may be an innovation in the North Carolina case law, we find nothing in the statute itself to prevent such a construction, and in the Constitution we find necessity for it.

■ Thus, we conclude as a matter of procedural due process that the statutorily prescribed "finding of facts establishing the right to execution against the person", N.C.Gen.Stat. § 1–311, embrace not only findings with respect to the wrong of the debtor upon his creditor but in addition a finding of probable cause to believe that he has committed or will commit further wrongs in order to cheat his creditors. For it seems to us manifest that there can be no justification in the first place for civil commitment of a debtor to prison unless their is some reasonable apprehension and belief that failure to do so will defeat recovery of the debt.

2.

North Carolina General Statutes § 23–32 ("Notice; length of notice and to whom given",) troubles us also. It provides that the imprisoned debtor *shall* give 20 days' notice of the time and place at which his petition to be discharged by reason of insolvency and full disclosure will be filed. A copy of such petition and an accounting of his assets must at that time be personally served on the creditor at whose suit he has been imprisoned, and if the creditor is out of the state the notice may be served on the officer having the claim to collect or by two weekly publications in any newspaper in the state. Meanwhile even the indisputably

impecunious, with no assets to hide, must languish.

We are convinced that N.C.Gen. Stat. § 23–32 postpones unconscionably and unconstitutionally, as a violation of procedural due process, the right of one imprisoned to have his day in court.[3] The period of detention is automatic and fixed at a minimum of 20 days, while it may be lengthened if the creditor is out of the state and there is difficulty in obtaining service of process upon him.

Firstly, we think it particularly unfair to require a debtor to remain imprisoned until he can notify a creditor insufficiently interested in the prosecution to remain in the state. Surely under those circumstances the liberty interest of the debtor outweighs the property interest of a creditor. Secondly, to require in general such a long period of delay before hearing an insolvent's petition for discharge makes it possible for a creditor at his whim to distort the legislative purpose and turn the statutory scheme into an instrument of vengeance. For example, an angry creditor, served with notice immediately and knowing full well that the debtor is indigent, may nevertheless require continued detention for the full 20 days simply to vent his spleen. If we allow this procedural shortcoming of N.C.Gen.Stat. § 23–32 to inject a random penal element into the body execution process, then all the panoply of procedural due process that attaches to the substantive criminal law must surround and protect the debtor, and we would be compelled to hold the entire statutory scheme of postjudgment arrest and bail unconstitutional. Instead, we hold the 20-day notice requirement of N.C.Gen.Stat. § 23–32 constitutionally deficient and declare that it may not be enforced.

Unless and until the legislature acts to fill the void, the result will be simply that the debtor must attempt to give his creditor *reasonable* notice of the filing and hearing date of his petition for discharge. How much notice is reasonable is a matter within the sound discretion of the state judiciary—absent a valid legislative enactment. But we think the liberty interest of an imprisoned debtor is sufficiently strong that he ordinarily should not be imprisoned longer than 72 hours after he has petitioned for discharge, unless the creditor examines him within that time and findings of fact by a judge or jury are made that he is actually concealing assets. *Cf.* N.C.Gen.Stat. § 1–311.

We may not, of course, authoritatively interpret a state statutory scheme. But we think the State's highest court would likely interpret the statutory scheme in such a way as to preserve the legislative purpose, if called upon to do so. We are thus inclined to the viewpoint that release of a debtor at the expiration of three days, even if the creditor has attempted and failed to prove concealment of assets, is not the end of the matter. Such a release is simply required, we hold, as a matter of procedural due process. We think it would not constitute a discharge of the debtor within the meaning of the term discharge as it appears in the various statutory sections. Presumably the creditor would still be entitled, even though the debtor has been released, to have the full 20 days to research the debtor's solvency and to insist upon a jury decision on the issue of fraudulent concealment. And if the verdict were adverse to the debtor, whether prior to his release from imprisonment or even many months thereafter, the statute provides that the judgment shall be imprisonment until a full and fair disclosure is made. N.C.Gen. Stat. §§ 23–36 & 23–37. *But see Carter v. Lynch, supra,* 429 F.2d at 158.

It is true that N.C.Gen.Stat. § 23–38 ("Effect of Order of Discharge") provides that the order of discharge, "whether granted upon a nonsuggestion of fraud, upon the finding of a jury in favor of the

---

**3.** Although the attack of the complaint is specifically directed at N.C.Gen.Stat. § 1–410, we view the pleadings as putting the release sections of the statutory scheme in issue, and on our own motion, permit an amendment challenging the constitutionality of N.C.Gen.Stat. § 23–32 *nunc pro tunc.*

debtor, *or otherwise*," (emphasis added) is to bar further arrest or imprisonment at the suit of the noticed creditor. But we think it reasonable to read this statute as relating only to *discharge qua discharge*, as distinguished from the 72-hour procedural due process release which contemplates the possibility of a later hearing and decision on the issue of fraudulent concealment. In short, we think it likely that the North Carolina Supreme Court would interpret the statute, in order to save its general purpose, to mean that release upon a failure to demonstrate concealment within 72 hours is not at all the same as discharge by verdict of a jury or upon the nonsuggestion of fraud.

 We also hold that a debtor may not be imprisoned longer than 72 hours because of inability or failure of the sheriff to personally or otherwise serve notice on his creditor of his petition for discharge. As a matter of common sense, the creditor likely knows the debtor is imprisoned because he occasioned it. Surely then he should anticipate a petition for discharge and be ready to meet it. Since the debtor cannot control service of process, he may not be kept imprisoned because of another's failure to effect it.

### 3.

By way of summary, therefore, we hold that before a capias of execution against the body of a person may issue there must be findings of fact sufficient to support a conclusion of probable cause to believe that the debtor is about to flee the jurisdiction or has concealed or diverted assets, or unless immediately detained will probably do so. We further hold that such a debtor, once imprisoned, must either be afforded an actual hearing, *cf.* N.C.Gen.Stat. § 1–311, within three days of his petition for release or be released—whether or not his creditor receives notice of his petition—but subject to being subsequently imprisoned upon an adverse answer by the judge or jury at a later trial to the issue of fraudulent concealment of assets.

### G.

The Right to Counsel. N.C.Gen.Stat. § 7A–451(a)(7) provides that "an indigent person is entitled to services of counsel in . . . a civil arrest and bail proceeding under chapter I, article 34, of the General Statutes . . . ." Grimes' complaint about that is that he did not know of it and that there are no statutory procedures for implementing it.

 The provision is plain on its face. We agree with Grimes that the State was bound to provide him counsel and that it did not do so. But we think the obligation of the State does not arise until there is a suggestion of indigency. There was nothing in Ms. Miller's complaint that could be read to suggest to the court that Grimes was an indigent. On the contrary, the suggestion was that he concealed an asset worth $18,000. It might well have been different had Grimes chosen to attend the trial.

 Since the legislature has itself provided for the right to counsel, we need not decide whether the proceedings in arrest and bail are sufficiently penal in nature to require it. Implementation is a simple matter, and again it is a matter involving procedural due process. That some notice of the legislative boon granted to such persons is necessary is shown by the difficulty Grimes had in getting counsel. The warrant of execution (*capias ad satisfaciendum*) issued by the Clerk pursuant to Judge McConnell's judgment simply commands the Sheriff to arrest Grimes and commit him to jail until he pays the judgment or is discharged according to law. For the protection of indigents, against which the statutory scheme was never intended to operate, and to implement the legislative command contained in N.C.Gen. Stat. § 7A–451(a)(7), we think it not too much to require that the arrest warrant served on the debtor contain the advice that if he is an indigent person he is entitled to services of counsel, that he may petition for preliminary release on the basis of his indigency, that if he does so he will have an opportunity within 72 hours to suggest his

indigency for both purposes to a judge, and that the judge will thereupon immediately appoint counsel for him if it is adjudged that he is unable to pay a lawyer. Of course, if Grimes had attended the trial he might then have suggested indigency. In such a case the right to counsel would attach prior to arrest and detention; and if the judge provisionally concludes he is indigent, counsel should be appointed.

■ We think that the right to free counsel provided by the legislature survives the release of a debtor upon the expiration of 72 hours, even if the creditor has not insisted on an adversary hearing at that time. In such a situation the question of indigency and the other side of the coin—concealment or diversion of assets—is unresolved. The debtor contends he is indigent, and the creditor may later choose to insist that he is concealing assets. We think the clerk or a judge under such circumstances must make a provisional determination of whether the debtor can provide his own counsel and upon a finding of apparent indigency, one should be appointed for him at the expense of the State.

### H.

■ We think that Grimes is not entitled to recover monetary damages from Patricia Miller. She proceeded under a statute and scheme that we hold to be constitutional. She cannot reasonably be held to a duty to have anticipated our construction of it—even though our construction would have benefited Grimes. Thus she acted in good faith.

. . . . .

We request that the Office of the Attorney General prepare and submit to opposing counsel an appropriate judgment to accomplish the following:

1. The complaint as to the constitutionality of Art. 34 of the North Carolina General Statutes (§§ 1–409 et seq.), will be dismissed.

2. The prayer for monetary relief against Patricia L. Miller will be denied.

3. North Carolina General Statutes § 1–311 and implementing release statutes constituting North Carolina's scheme for execution against the body of a person after judgment and appropriate findings of fact in accordance with this opinion are declared to be constitutional.

4. The 20-day notice requirement of N.C.Gen.Stat. § 23–32, so far as it operates as a bar to preliminary release, will be declared unconstitutional.

5. Notice of the statutory right to counsel must be contained in the warrant of body execution, and should be given at the first suggestion of indigency.

6. The prayer to constitute a class of plaintiffs is denied.

7. The prayer to constitute classes of defendants is denied.

8. The prayer for injunctive relief is denied.

9. Each side will bear its own costs.

10. Plaintiff's prayer for an award of attorney's fees under 42 U.S.C. § 1988 is denied.